**Charles Edward DAVIS, Petitioner,**

v.

**Peter J. PITCHESS, Sheriff of Los Angeles County, Respondent,**

**Civ. No. 71–2288–F(T).**

United States District Court,
C. D. California.

Jan. 9, 1974.

---

Richard Wasserstrom, Letwin & Wasserstrom, Santa Monica, Cal., for petitioner.

Evelle J. Younger, Atty. Gen., Edward A. Hinz, Jr., Chief Asst. Atty. Gen., Doris H. Maier, Asst. Atty. Gen., Norman H. Sokolow, Lawrence P. Scherb, II, Deputy Attys. Gen., Los Angeles, Cal., for respondent.

## OPINION AND ORDER MODIFYING WRIT OF HABEAS CORPUS

FERGUSON, District Judge.

This opinion and order is made with reference to the following facts:

1. Following his conviction for rape in the Los Angeles Superior Court and exhaustion of state remedies, petitioner filed in this court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

2. This court on September 22, 1972 found that the Due Process Clause was violated at his state court trial when police laboratory reports which analyzed vaginal smear slides and an undergarment of the prosecuting witness were wrongfully suppressed by the prosecutor. A copy of the findings of fact and conclusions of law are appended hereto as Exhibit A.

3. The court then issued a conditional writ of habeas corpus which provided that the petitioner shall be discharged unless the State shall institute proceedings to retry the petitioner within 60 days from the date the conditional writ became final. A copy of that conditional writ is appended hereto as Exhibit B.

4. On March 2, 1973 the Court of Appeals for the Ninth Circuit affirmed the conditional writ by a Memorandum of Affirmance, a copy of which is apended hereto as Exhibit C.

5. Thereafter the State elected to retry petitioner.

6. At a pretrial discovery proceeding in the state court it was determined that the slides and undergarment had been destroyed by the Los Angeles Police Department and were therefore no longer available to petitioner in his defense to the prosecution.

7. Petitioner filed a motion in the Superior Court to dismiss the action because of the unavailability of the items,

claiming that the original misconduct of the State in suppressing the laboratory reports was now incurable and irremediable.

8. A hearing was held in the Superior Court at which time that court made an express finding of fact that petitioner had shown a reasonable possibility that the slides and undergarment, if shown to a jury as demonstrative evidence, would have aided the petitioner in the presentation of his defense.

9. However, the Superior Court denied the motion to dismiss.

10. Petitioner then applied to the California Court of Appeal for a writ to prohibit the retrial. That court denied the application without opinion on September 25, 1973.

11. On October 1, 1973 petitioner filed his motion in this court to modify the conditional writ heretofore granted and make it absolute.

12. This court issued its preliminary injunction enjoining the State from commencing or continuing with the reprosecution of the petitioner until further order of this court.

13. The State then petitioned the Court of Appeals for the Ninth Circuit for a writ of prohibition and mandamus to direct this court not to interfere in the state court proceedings.

14. On November 13, 1973 the Court of Appeals denied the petition for such a writ. A copy of the order of the Court of Appeals is appended hereto as Exhibit D.

15. Then the State filed an application to the United States Supreme Court that all proceedings in this matter in this court be stayed.

16. Mr. Justice Douglas denied the application. A copy of the order of denial is appended hereto as Exhibit E.

17. The state Supreme Court denied petitioner's petition for writ of prohibition to prohibit his retrial. All state remedies have, therefore, been exhausted.

18. On January 4, 1974 the court conducted an evidentiary hearing and received evidence from Dr. Eli Sercarz, a professor of microbiology and immunology at U.C.L.A. and from Mr. John Cockenham, a criminologist at the State of California Crime Laboratory.

19. The evidence produced at that hearing reveals the following:

a. All human secretions such as saliva, semen, vaginal secretion and tears contain a number of protein substances that are common to all such secretions.

b. Each of these human secretions also contain some protein substances that are peculiar to that secretion. This makes it possible to test a slide, which contains a human secretion, to determine what particular secretion is on the slide.

c. More than 80% of all human beings secrete blood group substances in their secretions. Such persons are called "secretors." The human secretions of secretors of blood group substances contain substances which make it possible to determine the ABO blood type of the person whose secretion it is.

d. A slide containing a human secretion can be tested to determine whether the secretion came from a secretor. If it did, then the secretion can be further tested to determine the ABO blood type of the person whose secretion it is.

e. This test for ABO blood type makes it possible absolutely to exclude classes of persons as having been the source of a particular human secretion.

f. This type of test for ABO blood type based upon human secretions is a test regularly and routinely employed by the State of California to exclude suspected rapists from criminal prosecution.

g. It is a scientific probability that such tests can be made with scientific certainty on material placed on a slide over 6 years ago.

h. Dried protein substances in order to make such tests need not be kept refrigerated but need only be

kept in a standard atmospheric climate.

i. If the slides taken from the victim were in existence today, accurate scientific tests could be performed which could exclude the respondent as the alleged rapist.

It thus appears that the misconduct of the State in suppressing evidence favorable to the petitioner at his trial has now been made incurable by the destruction of the slides and undergarments.

It does little to our Constitution to contend that the petitioner, if he were to be retried, has a right to present all these facts before a jury and argue with all the fervor his attorneys can command that he should be found not guilty. The State by its conduct simply has prevented him from having a constitutionally fair trial.

At the time the court granted the conditional writ of habeas corpus, neither it nor the petitioner knew that the slides and undergarments had been destroyed by the State. It was not until the process for the retrial began did the State disclose their destruction. It may be true that the destruction was not intentional; but the fact remains there was a destruction. It may be true, further, that counsel for the State did not know of such destruction sooner, the fact is that it is the State of California which seeks to try the petitioner and it was the State acting through its agents which destroyed evidence which was favorable and exculpatory to the petitioner. See Giglio v. United States, 405 U.S. 150 (1972).

The court would have made its writ absolute originally if the true and total facts had been presented to it at that time. It is a gross miscarriage of justice to contend that such nondisclosure could prohibit a federal court from upholding the Constitution and laws of the United States when the true facts are presented to it.

■ It is true as the Supreme Court has stated in Fay v. Noia, 372 U.S. 391,

footnote 45 at p. 440 (1963) that the typical order of a district court in state prisoner cases is a conditional release, permitting the state to rearrest and retry the petitioner without actually discharging him from custody. However, there is no limitation in the statute, 28 U.S.C. §§ 2241–2254, which restricts the federal courts to that remedy. Jurisdiction exists to grant an absolute writ when demanded by the Constitution. 28 U.S.C. § 2243 provides that, "The court shall . . . dispose of the matter as law and justice require."

United States ex rel. Miller v. Pate, 429 F.2d 1001 (7th Cir. 1970) is not controlling. There the issue was whether a federal court had jurisdiction to restrain the retrial of a state prisoner after the granting of a conditional writ on the basis of the prisoner's claim of being "denied a speedy trial and other related matters." The district court did not have jurisdiction for the obvious reason that he had not exhausted his state remedies on that issue, and further that the issue of a speedy trial was an issue extraneous to the reasons why the conditional writ was granted in the first place.

Here, petitioner has exhausted his state remedies, and more importantly the issues which he now raises are explicitly interwoven within the due process claim that caused this court and the Ninth Circuit to grant and approve the conditional writ.

Further, the petitioner here is seeking to obtain the relief to which he would have been entitled originally if this court had been made aware then of the true facts. In *Miller* the speedy trial issue upon retrial, of course, was a fact outside and removed from the granting of the writ of habeas corpus originally.

The matter is before the court pursuant to a motion made pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. See 7 Moore, Federal Practice 60.22 pp. 246–247. However, for all

purposes the motion could be considered as a new petition for writ of habeas corpus, as the petitioner has exhausted all his state remedies.

█ It is never an easy matter to foreclose a criminal trial. Both society and the defendant are entitled to a conviction or exoneration after a fair trial. It is only in rare instances that a fair trial cannot be held. This case presents one of them. The Court of Appeals of the State of California, in Harris v. Superior Court, 35 Cal.App.3d 24, 110 Cal. Rptr. 400 (1973) where the court prohibited the retrial of a defendant after the appellate reversal of his conviction on the ground that it was error for the State not to disclose the identity of an informer, and the informer was no long-er available at the time of the retrial, stated the matter:

"If any party must suffer the consequence of the prosecution's original decision to refuse disclosure of the identity of the informer in this case, it must be the People and not the accused."

The motion of the petitioner to modify the conditional writ of habeas corpus and to make it absolute is granted. Counsel for petitioner shall lodge with the court a proposed amended writ within ten days hereof.

It is further ordered that the clerk this date shall serve copies of this opinion and order by United States mail upon the attorneys for the parties appearing in this action.

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Charles Edward Davis,
Petitioner,
vs.
Peter J. Pitchess, Sheriff of Los Angeles County
Respondent.

Civil No. 71–2288–F(T)

FINDINGS OF FACT AND CONCLUSIONS OF LAW.

*Findings of Fact*

1. This is a proceeding brought under Title 28 U.S.C. §§ 2241 and 2254 in which petitioner has filed a petition for Writ of Habeas Corpus to vacate and set aside a judgment and sentence in a state criminal case.

2. The petitioner is in the custody of Peter J. Pitchess, Sheriff of Los Angeles County, pursuant to a conviction following a jury trial in The Superior Court, County of Los Angeles on a criminal information in Case No. A220869. The information charged:

Count One—Kidnapping in violation of Section 207 of the California Penal Code.

Count Two—Rape in violation of Section 261(4) of the California Penal Code.

Count Three—Forcible oral copulation in violation of Section 288a of the California Penal Code.

3. Petitioner was sentenced on July 28, 1967 to the State Prison for the term prescribed by law on Count 2. Sentences as to Counts 1 and 3 were stayed until completion of the sentence on Count 2, whereupon the stay on Counts 1 and 3 were to become permanent.

4. Petitioner appealed his conviction to the District Court of Appeal, Second District, Division Five. The District

Court of Appeal affirmed the conviction on September 5, 1969 in an unpublished opinion, People v. Davis Criminal No. 14443.

5. A hearing was denied by the California Supreme Court on October 29, 1969.

6. Petitioner then filed a Petition for Writ of Habeas Corpus, Civil No. 69–2379–IH, on November 28, 1969 in the United States District Court, Central District of California. The petitioner was unrepresented by counsel, no return by way of answer to the petition was ordered, no hearing was held, no supporting briefs were filed, and the petition was denied by Judge Irving Hill in an order entered on December 10, 1969.

7. A subsequent Petition for Writ of Habeas Corpus, Civil No. 71–1285–R(T), was filed by the petitioner. He was unrepresented by counsel, no return by way of answer to the petition was ordered, no hearing was held and no supporting briefs were filed. The petition was denied by Judge Manuel Real in an order entered on June 9, 1971.

8. A Petition to Recall Remittitur was denied by the District Court of Appeal on July 29, 1971.

9. A Petition for a Writ of Habeas Corpus, Criminal No. 15785 was denied without argument or opinion by the California Supreme Court on September 20, 1971.

10. The instant Petition for Writ of Habeas Corpus was filed in forma pauperis by the petitioner on September 23, 1971, and supplemented by the petitioner on October 1, 1971.

11. The primary issue raised in this Petition for Writ of Habeas Corpus, as well as in petitioner's earlier petition and in his appeal to the District Court of Appeal, concerns the suppression by the prosecution of an analyzed evidence report which showed an absence of semen both in the vaginal area and on the panties of the victim of the alleged rape.

12. The rape in question is supposed to have occurred late in the evening of April 10, 1967 in Los Angeles. There were no witnesses except the alleged victim, Mrs. Josephine Gilchrist. According to her testimony at the trial, she was on her way to visit a male friend (not her husband) and had just parked her car when she was accosted by a man she had never seen before and forced at gunpoint to enter his car. She drove with him to a dark street where her assailant first ordered her to remove her pants, next performed an act of oral intercourse on her, and then raped her. The assailant then returned her to her car and released her. Mrs. Gilchrist hastened to her friend's apartment, told him of the events that had just transpired and the two of them went, shortly thereafter, to the University Police Station where Mrs. Gilchrist reported the attack.

13. Mrs. Gilchrist was interviewed at the University Police Station early in the morning of April 11, 1967 and a written report was made of that interview. The written report states ". . . vict removed clothing, susp unzipped his pants & completed an act of sexual intercourse, climaxing just prior to completing act." (Miscellaneous Complaint or Crime Report # 67–473–407 lines 22–23. Petitioner's Exhibit 8.)

14. Mrs. Gilchrist was then sent by the police to Central Receiving Hospital where she was examined by a doctor and where slides were taken of her vaginal area.

15. The petitioner was arrested a few days thereafter by virtue of the fact that the car he was driving was thought to resemble the assailant's car as described by Mrs. Gilchrist.

16. On the following day the petitioner was placed in a pre-Wade line-up and identified by Mrs. Gilchrist as the rapist.

17. On April 13, 1967 Lieutenant Mann of the Los Angeles Police Department analyzed for the presence of sperm the slides that had been taken of Mrs. Gilchrist's vaginal area on April 11, 1967 and he also analyzed the panties

that Mrs. Gilchrist had worn on the evening of April 10, 1967. On that same date Lieutenant Mann prepared a written report of his analysis. The report stated that "He was unable to find sperm on the slides. He was unable to identify semen in the panties." (Analyzed Evidence Report # DR 67-473-407. Petitioner's Exhibit 7.)

18. The preliminary hearing in the case of The People v. Davis No. A220869 was held on April 24, 1967.

19. At the preliminary hearing Mrs. Gilchrist testified, in part, as follows. "[Testimony of Mrs. Gilchrist] I said 'What are you doing?'

"And he said—I can't think of what he said, but I said—I sàid that 'You said that you weren't going to do that.'

"He said, 'One thing I want to do is discharge up in you.' And then—

"Q. He said that?

"A. (Nods head)

"Q. What happened after he made this statement to you?

"A. Well, he—we had intercourse. And as he was coming out, he discharged." (Preliminary Hearing Transcript p. 13 lines 2-13. Petitioner's Exhibit 1.)

20. Petitioner was held to answer after Mrs. Gilchrist testified.

21. The transcript of this preliminary hearing was not a part of the record and was not considered by any of the courts involved in the proceedings described in paragraphs 4 through 9 above.

22. In the course of the pre-trial proceedings the petitioner, who was representing himself, filed a written motion for pre-trial discovery. The motion was considered by the court on June 5, 1967. The motion was not, however, formally acted upon by the court because, at the suggestion of the court, the Deputy District Attorney, Herbert M. Jacobowitz, agreed to make the information available without the necessity of a formal hearing and order. (Clerk's Transcript p. 9; Petitioner's Exhibit 5; Declaration of Deputy District Attorney, Herbert M. Jacobowitz, p. 2, lines 5-12. Respondent's Exhibit A).

23. Petitioner's discovery motion asked, in part, for "Any reports of police experts, concerning the results of their examination of physical evidence presented, or to be presented in the case."

24. That afternoon Mr. Jacobowitz checked his case file and discovered that only some of the police reports were present. Mr. Jacobowitz called one of the investigating officers, advised him of the defendant's motion, and told him that ". . . it would be necessary to get copies of the reports for the defendant and also that I was lacking copies of the reports for the District Attorney's file." (Declaration of Herbert M. Jacobowitz p. 2, lines 19-21. Respondent's Exhibit A.)

25. During this same conversation Mr. Jacobowitz was advised for the first time by the officer with whom he was talking that slides containing vaginal smears had been taken, that the slides had been analyzed by the Los Angeles Police Department, and that an analysis of these slides had proved negative, i. e. that no sperm was present in Mrs. Gilchrist's vagina when she was taken to Central Receiving Hospital shortly after the alleged rape. The officer did not, however, tell Mr. Jacobowitz at that time that there was a specific written report embodying that information.

26. On the following day, June 6, 1967, the officer delivered two envelopes to Mr. Jacobowitz and left them on his desk while Mr. Jacobowitz was out. One envelope was marked with the petitioner's name on it, the other with Mr. Jacobowitz's name on it. Mr. Jacobowitz then informed the petitioner that copies of the police reports were now available.

27. On June 7th the petitioner came to the District Attorney's office to pick up the reports. Mr. Jacobowitz opened the petitioner's envelope, gave him all the reports contained therein, and had the petitioner sign a receipt for them.

These reports included the Los Angeles Police Department Miscellaneous Complaint or Crime Report (Petitioner's Exhibit 8) and the Los Angeles Police Department Property Report No. 67–473–407 (Petitioner's Exhibit 9.)

28. The envelope with petitioner's name on it did not contain, and petitioner did not receive, a copy of the Analyzed Evidence Report (Petitioner's Exhibit 7) that reported Lieutenant Mann's findings.

29. Mr. Jacobowitz did not tell the petitioner what he had learned in his telephone conversation of June 5, 1967; namely, that the slides had been analyzed by the Los Angeles Police Department and that the analysis for sperm had been negative.

30. On June 9, 1967 petitioner was arrested on an unrelated matter, and he remained continuously in the custody of the Sheriff of Los Angeles County until after the conclusion of his trial in the case of The People v. Davis No. A220869.

31. At some date after petitioner was convicted and before he appealed his conviction to the District Court of Appeal, petitioner learned for the first time of the Analyzed Evidence Report and the information contained therein.

32. In the light of Mrs. Gilchrist's testimony at trial that the assailant discharged "as he was coming out," Lieutenant Mann's finding of the absence of sperm in Mrs. Gilchrist's vaginal areas or on her panties was highly relevant and material evidence going to the petitioner's guilt or innocence of the offenses charged.

33. In the light of Mrs. Gilchrist's statement on April 11, 1967 to the investigating police officers that the assailant climaxed "just prior to completing act," Lieutenant Mann's finding of an absence of sperm in Mrs. Gilchrist's vaginal areas or on her panties was highly relevant and material evidence going to the petitioner's guilt or innocence of the offenses charged.

34. In the light of Mrs. Gilchrist's testimony at the preliminary hearing that the assailant said: "One thing I want to do is discharge up in you," Lieutenant Mann's finding of an absence of sperm in Mrs. Gilchrist's vaginal areas or on her panties was highly relevant and material evidence going to the petitioner's guilt or innocence of the offenses charged.

35. It is reasonably probable that the petitioner would have been acquitted of all the charges by the jury, if the jury had been informed of the results of Lieutenant Mann's analysis.

36. It was not harmless error beyond a reasonable doubt that the prosecution suppressed the findings of Lieutenant Mann as embodied in the Analyzed Evidence Report.

37. Lieutenant Mann's findings as embodied in the Analyzed Evidence Report were properly and adequately requested by the petitioner in his pre-trial discovery motion.

38. On or about June 10, 1967 Mr. Jacobowitz had in his possession Lieutenant Mann's Analyzed Evidence Report, had read it, and understood its contents.

39. On or about June 10, 1967 Mr. Jacobowitz knew that the Analyzed Evidence Report had not been contained in petitioner's envelope and that it had not, therefore, been furnished to the petitioner.

40. On no occasion between the time Mr. Jacobowitz opened his envelope and the conclusion of petitioner's trial on July 11, 1967 did Mr. Jacobowitz furnish or attempt to furnish the petitioner with a copy of the Analyzed Evidence Report.

41. On no occasion between the time Mr. Jacobowitz opened his envelope and the conclusion of petitioner's trial did Mr. Jacobowitz apprise or attempt to apprise the petitioner of the existence of the Analyzed Evidence Report.

42. Lieutenant Mann's findings as embodied in the Analyzed Evidence Report were knowingly and wilfully with-

held from the petitioner by Mr. Jacobowitz from on or about June 10, 1967 until after petitioner's trial was concluded.

43. On July 5, 1967 the petitioner made an unsuccessful motion before the trial court for an additional continuance in his case. He needed the additional time, he informed the court, in part because the Miscellaneous Complaint or Crime Report that Mr. Jacobowitz had furnished to him on June 7, 1967 indicated that Mrs. Gilchrist had been examined at Central Receiving Hospital and that slides had been made. These, the petitioner told the court, he had been unable to obtain through his own efforts. (Reporter's Transcript p. 43A. Petitioner's Exhibit 3. The page bears the heading "Los Angeles, California, Wednesday, May 31, 1967." The date is erroneous and should read "July 5, 1967.")

44. Mr. Jacobowitz opposed the granting of a continuance. He gave as his reason the following: "I furnished everything I was supposed to, including all the police reports available, the arrest report, the crime report, whatever was involved.

"I gave everything to the defendant. I believe that the defendant received everything, and gave me a receipt for everything.

"He received everything available to the District Attorney at that time.

"Now, as far as the records of the hospital, I think he has a right to subpoena those records, not through our office, and he had an opportunity to do that." (Reporter's Transcript p. 47A, lines 20–26, p. 48A, lines 1–5. Petitioner's Exhibit 3.)

45. The Analyzed Evidence Report was available to Mr. Jacobowitz on June 7, 1967 when the petitioner came to Mr. Jacobowitz's office to receive the police reports from Mr. Jacobowitz.

46. Mr. Jacobowitz was in error when he told both the trial court and the petitioner on July 5, 1967 that the petitioner had been given all the available police reports.

47. Mr. Jacobowitz's statement to the court and the petitioner misled the court and the petitioner concerning the extent of prosecutorial compliance with the pre-trial discovery order.

48. Mr. Jacobowitz's statement to the court and the petitioner misled the court and the petitioner concerning the existence of material, exculpatory evidence which was in the possession of the prosecution.

49. From the information that had been provided to the petitioner by Mr. Jacobowitz there was no way in which petitioner could reasonably have learned of Lieutenant Mann's investigation or of the results of that investigation.

*Conclusions of Law*

1. This Court has jurisdiction under 28 U.S.C. §§ 2241 and 2254.

2. This Court is required to entertain the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2244(b) because no hearing on the merits was held in connection with either of the prior two petitions filed by petitioner.

3. This Court is required to entertain the instant petition pursuant to 28 U.S.C. § 2244(b) because certain relevant facts stipulated to by the parties in this case and found by this court in paragraphs 21, 30, and 31 above were unknown to the courts that considered the prior petitions.

4. The ends of justice will be served by entertaining the instant petition.

5. This Court has the discretionary authority to hear this petition pursuant to 28 U.S.C. § 2244(b).

6. This Court has a duty independently to apply the applicable federal law to the facts found by the state court in this case, and this Court may not give binding weight to the state court's determination of the correct federal law to be applied in this case.

7. The Analyzed Evidence Report constituted material evidence favorable to the accused.

114

8. The Analyzed Evidence Report was knowingly and wilfully suppressed by the prosecution.

9. Petitioner was denied due process of law by the suppression by the prosecution of the Analyzed Evidence Report which had been requested by the petitioner.

10. Petitioner was denied due process of law by the wilful suppression by the prosecution of the Analyzed Evidence Report.

11. Petitioner was denied due process of law by the failure of the prosecution to inform the petitioner of the existence and contents of the Analyzed Evidence Report.

12. Petitioner was denied due process of law by Mr. Jacobowitz's statement to the trial court and the petitioner on July 5, 1967, that everything available to the prosecution on June 7, 1967, had been turned over to the petitioner.

13. It is reasonably probable that the jury would have acquitted the petitioner if it had known of the results of Lieutenant Mann's analysis.

14. None of the denials of due process specified in conclusions 9, 10, 11 and 12 constituted error that was harmless beyond a reasonable doubt.

Any conclusion of law hereinabove recited which should be deemed a finding of fact is hereby adopted as such. Any finding of fact which should be deemed a conclusion of law is hereby adopted as such.

September 22, 1972.

(s) Warren J. Ferguson
WARREN J. FERGUSON
United States District Judge

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Charles Edward Davis,<br>            Petitioner,<br>vs.<br>Peter J. Pitchess, Sheriff of Los Angeles County,<br>            Respondent. | Civil No. 71–2288–F(T)<br>CONDITIONAL WRIT OF HABEAS CORPUS. |

The petition for a Writ of Habeas Corpus on behalf of Charles Edward Davis having come on to be heard before this Court on the 28th day of August, 1972, and after hearing Richard Wasserstrom, attorney for the petitioner in support of the petition, and Lawrence Scherb, Deputy Attorney General for the State of California in opposition, and upon consideration of the petition for the Writ of Habeas Corpus, the briefs in support of the petition, the return by way of answer, and the papers and exhibits filed herein, it is:

Ordered that Peter J. Pitchess, Sheriff of Los Angeles County, or whosoever may have custody of the body of Charles Edward Davis, shall discharge the petitioner, Charles Edward Davis, from custody insofar as he is held in custody by nature of his conviction in Case No. A220869, unless the State of California shall institute proceedings to retry petitioner within 60 days from the date this conditional writ becomes final

September 22, 1972.

(s) Warren J. Ferguson
WARREN J. FERGUSON
United States District Judge

EXHIBIT C

"NOT PUBLISHED"

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

No. 72–2850

[March 2, 1973]

Appeal from the United States District Court
for the Central District of California

---

Before: TRASK and GOODWIN, Circuit Judges, and EAST,* District
     Judge.

## MEMORANDUM OF AFFIRMANCE

The trial court entered a conditional writ of habeas corpus in favor of Davis, the Petitioner-Appellee (ordering a timely new trial or release from custody). The Appellant Sheriff appeals and we affirm.

We find that the specific findings of fact entered by the trial court are clearly supported by the pre-trial statement of facts agreed to by the parties, and further that the trial court did not mechanically adopt Davis' prepared findings of fact and conclusions of law as condemned by *Industrial Bldg. Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1339–1340 (9th Cir. 1970).

Accordingly, we conclude that

(a) The substance of the Analyzed Evidence Report, prepared during the course of police investigation, contained evidence of an exculpatory nature and material to Davis' defense; and

(b) That Davis was denied a fair trial upon the state charges in that, notwithstanding his adequate request therefor, knowledge of the existence of the report and its substance was wrongfully, either wilfully or through inexcusable neglect, withheld from Davis prior to verdict. *Brady v. Maryland*, 373 U.S. 83, pp. 87–88.

Conditional writ of habeas corpus affirmed.

Dated this 26th day of February, 1973.

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

EXHIBIT D

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Before: MERRILL and HUFSTEDLER, Circuit Judges.

The petition for a writ of prohibition/mandamus is denied.

(s) Charles A. Merrill

(s) Shirley Hufstedler

Circuit Judges

EXHIBIT E

SUPREME COURT OF THE UNITED STATES
OFFICE OF THE CLERK
WASHINGTON, D.C.   20543

November 14, 1973

Evelle J. Younger, Esq.
Attorney General of California
600 State Building
217 West First Street
Los Angeles, California   90012

Attention:  Frederick R. Millar, Jr., Esq.
            Deputy Attorney General

   RE:  California v. Hon. Warren J. Ferguson, U. S. District Court
        Judge, and Charles Edward Davis, A–427

Dear Mr. Millar:

   Your application for stay in the above-entitled case was presented to
Mr. Justice Douglas who has endorsed thereon the following:

   "Application for stay denied.
   .  W. O. D.        11/10/73"

                                    Very truly yours,

                                    MICHAEL RODAK, JR., Clerk

                                    Arthur G. Christean
lab                                 Deputy Clerk

cc:  Richard Wasserstrom, Esq., Letwin & Wasserstrom, 249–23rd
     Street, Santa Monica, Calif.   90402

     Hon. Warren J. Ferguson, U. S. District Judge, U. S. Courthouse,
     312 North Spring Street, Los Angeles, California   90012