DIXON, Chief Justice.
Defendant Tracy Glen Clark was indicted by a DeSoto Parish Grand Jury for aggravated rape (R.S. 14:42). Defense counsel filed a pretrial motion to quash the indictment on the ground that the state failed to preserve certain evidence — vaginal swabs and washings, seminal stains on a bedsheet and other physical evidence — which was used by the state to conduct its tests, rendering it impossible for defendant to run further tests that could rule him out as the perpetrator of the offense. The trial court granted the motion to quash and the state sought review of that ruling in this court.
Meanwhile, the state filed a bill of information charging defendant with aggravated burglary (R.S. 14:60), the facts of which are the same as those in the aggravated rape charge. Again, defense counsel filed a motion to quash This time he alleged that the second charge constituted double jeopardy because the first charge, which arose out of the same incident and thus must be proved by the same evidence, was previously dismissed. The trial court granted the motion to quash and the state applied to this court for writs to review that ruling.
Writs were granted in the aggravated rape case, 81-K(A)-2670, and the aggravated burglary case, 81-K-3112, and the cases were consolidated for our review.
On September 11, 1980 the victim herein reported to the DeSoto Parish sheriff’s department that she was raped by a black man who gained entry to her trailer in rural DeSoto Parish. The victim reported that the rape took place at approximately 2:00 o’clock that morning. Dr. Brouillette, the victim’s personal physician, examined her from 6:00 a. m. to 8:00 a. m. that morning and completed a “rape kit” at the request of the sheriff’s deputies. The rape kit consisted of a questionnaire concerning certain pubic hair combings, vaginal swabs and washings, certain blood and tissue samples and the physical condition of the victim. Dr. Brouillette returned the rape kit to the deputies, but retained the test tube containing vaginal washings and a slide which contained a sample that was used to determine if sperm was present.
The deputies removed from the victim’s bedroom a bedsheet containing a large seminal stain and a pillowcase. These items and the rape kit were delivered to the Northwest Louisiana Criminalistics Laboratory in Shreveport at 7:29 p. m. on Septem *739 ber 11,1980. A few days later the deputies delivered to the crime lab items removed from defendant, namely, samples of defendant’s blood, saliva and pubic hair combings.
Subsequent to defendant’s arraignment on March 3, 1981, defense counsel filed discovery motions seeking the results of the tests run at the crime lab. Defense counsel received the results of the tests on April 30, 1981. The report showed that the tests were performed by Pat Wojtikiewicz of the crime lab, who analyzed the vaginal swabs and washings on September 12, 16, 17 and 18. He froze the liquid samples after completing the tests on September 18, 1980. Defendant’s blood was tested on December 2, 1980. Wojtikiewicz testified that the bedsheets and pillowcase, which were stored at room temperature since September of 1980, were tested on February 4, 5, 6 and 9 of 1981 — he stated that his tremendous workload forced him to delay the testing of those items and he did not freeze them because he felt the seminal stains were less susceptible to deterioration. The tests revealed seminal stains on the victim’s bed-sheet consistent with seminal fluid from a “secretor”[1] of blood Group O substance, the same as defendant. (The victim is a se-cretor of blood Group A substance).
Upon receiving the crime lab’s report, defense counsel engaged two experts, Dr. George McCormick, a forensic pathologist and Bossier Parish coroner, and Dr. I. C. Stone, chief of the Physical Evidence Section of the Institute of Forensic Sciences in Dallas, Texas. Both doctors criticized Woj-tikiewicz’s decision not to freeze the bed-sheet because the seminal stain had lost some of its enzyme properties.[2] According to Dr. McCormick and Dr. Stone, enzyme properties deteriorate more rapidly than other properties in semen samples. Additionally, the test tube containing the vaginal washings was broken and the slide which contained the sample could not be found. Therefore, it became impossible to conduct further tests on the evidence which could have possioly exonerated defendant.
On August 2, 1981 the trial court found that the state was negligent in failing to properly preserve the evidence for further testing. The court further found that this was material evidence because even though the victim made a positive identification of defendant, on at least one prior occasion the victim and defendant were in close proximity to each other and the victim did not identify defendant. The court reasoned that due to a mishandling of the evidence defendant had been deprived of important scientific evidence bearing on the identity of the perpetrator and that justice would not be served if the defendant were to go to trial with such a severe handicap in terms of proof. The court therefore sustained defendant’s motion to quash.
The state contends that it did not act negligently in failing to preserve seminal stains for future testing by defense experts, and that even the negligent destruction of evidence, which could exonerate defendant, does not provide grounds for the trial court to dismiss an indictment. Defense counsel contends that the trial court’s ruling should be upheld because the destruction of the evidence which could exonerate the defendant deprived him of his right to a fair trial.
*740 Destruction of evidence is not among the grounds for a motion to quash an indictment under C.Cr.P. 532 and 533.[3] Defense counsel has not cited any case in which this court has upheld an order by a trial court sustaining a motion to quash based on the ground that the state failed to preserve certain evidence which might have exonerated defendant had defense’s expert been able to make an independent examination of the evidence. Neither do the cases from other jurisdictions which defense counsel cited in brief authorize the pretrial dismissal of charges against a defendant when such evidence is unavailable for further testing by defense’s expert. Rather, those cases were concerned with post conviction remedies available to the defendant when it was discovered that the state intentionally or negligently suppressed exculpatory evidence. Nevertheless, in each of those cases the remedy provided by the reviewing court was to order the trial court to grant the defendant a new trial or, presumably, dismiss the charges against him if the state decided not to retry him. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Flanagan v. Henderson, 496 F.2d 1274 (5th Cir. 1974); Davis v. Pitchess, 388 F.Supp. 105 (C.D.Cal.1974), aff'd. 518 F.2d 141 (9th Cir. 1974), rev’d. 421 U.S. 482. 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975); Bowen v. Eyman, 324 F.Supp. 339 (D.C.Ariz.1970); State v. Gammill, 2 Kan. App.2d 627, 585 P.2d 1074 (1978).
This court recognizes that:
“ ‘... Fundamental fairness is violated when a criminal defendant on trial for his liberty is denied the opportunity to have an expert of his choosing, bound by appropriate safeguards imposed by the Court, examine a piece of critical evidence whose nature is subject to varying expert opinion.’ ...” State v. Gray, 351 So.2d 448, 454 (La.1977).
See Brady v. Maryland, supra; Barnard v. Henderson, 514 F.2d 744 (5th Cir. 1975).
We held in State v. Migliore, 261 La. 722, 260 So.2d 682 (1972), that where there is a sufficient amount of the evidence, the defendant should be permitted to conduct an independent examination. But in no case was the charge against a defendant dismissed because he could not make an independent examination of the evidence or because the state suppressed exculpatory evidence.
In State v. Boyd, 359 So.2d 931 (La.1978), the defendant was unable to make an independent examination of a blood sample taken off of his pants because the entire sample was consumed by the tests conducted by the state. The state’s witness who conducted the test testified that the victim’s blood was type A positive, and the blood found on the defendant’s pants was determined to be type A human blood. She testified further that she was not able to determine the RH factor of the blood found on the defendant’s pants leg due to the insufficient amount tested.
*741 Defendant moved for a mistrial on the ground that he was denied the opportunity to examine this evidence. The trial court, however, denied the motion and stated that the evidence was not necessarily exculpatory (and therefore was not required to be disclosed by Brady) just because it would not conclusively show that the blood on defendant’s pants was the same as that of the victim. Additionally, the trial court denied the defendant’s alternative request that all testimony by the state’s witness insofar as it concerned the results of the test run on the blood samples be excluded, and that the court give instructions to the jury to disregard such testimony. In upholding the judgment of the trial court, this court stated:
“... Nowhere in Ms. Reel’s testimony did she state that the blood found on defendant’s pants was the victim’s blood. Indeed, on cross-examination, Ms. Reel admitted that she would be unable to say whether the blood found on defendant’s pants was the same as found in the sample from the victim. Thus, the jury was not misled into believing that the witness’ testimony was conclusive, and admission of the testimony would therefore not have the damaging effect on defendant’s caSe that he contends. Rather, the jury was in a position to evaluate the testimony and determine what weight it was to be given.” State v. Boyd, supra, at 945.
The Boyd decision is controlling in the instant case. The unavailability of the evidence for further testing does not in itself so prejudice defendant’s right to a fair trial so as to warrant a dismissal of the prosecution. Defense counsel may still present evidence to the jury to show the inconclusive nature of the tests performed at the crime lab. The jury should be allowed to evaluate the testimony and determine what weight it is to be given. Therefore, the trial court erred in granting defendant’s motion to quash the indictment in the aggravated rape case.
At the hearing on the motion to quash the bill of information charging defendant with aggravated burglary, the parties stipulated that all testimony adduced during the hearings held on the motions filed in the aggravated rape case, which had been filed with this court, 81-K(A)-2670, be made part of the proceedings. In sustaining defendant’s motion to quash, the trial court stated that since the evidence did exist at one time, and through negligence (attributable to the state) it no longer exists, the jury would be denied the opportunity to be presented with all the evidence that was available from the beginning. Again, mere negligence in preserving evidence, which prevents testing by defendant for' possible exonerating characteristics, is not such a denial of fundamental fairness that the prosecution must be dismissed.
For these reasons, the judgments of the trial court quashing the indictment for aggravated rape (81-K(A)-2670) and quashing the bill of information charging defendant with aggravated burglary (81-K-3112) are hereby reversed, and the cases are remanded to the trial court for proceedings not inconsistent with this opinion.

. A “secretor” is any individual who secretes his particular blood group or substance in his other body fluids.

. There are four tests for identifying substances that might include or exclude an accused as the perpetrator of a rape. The tests determine secretor status, blood type, phospho-glucomutase (PGM) enzyme and peptidase-A enzyme. While Mr. Wojtiewicz was successful in determining that the perpetrator of the crime was a secretor of blood Group O substance, as is defendant, his test for PGM enzyme proved negative and he did not test for peptidase-A enzyme.
Dr. Stone testified that 80% of the population are secretors and 49% of all blacks have type O blood. Therefore, according to Dr. Stone’s calculations, the tests conducted at the crime lab show that defendant, along with 39% of all black males, could have left the seminal stain. Further, defense’s expert witnesses testified that had the seminal stains been properly preserved, they could be tested for enzyme properties, which could place the perpetrator of the crime within approximately 4% of the black male population.

. C.Cr.P. 532 provides:
“A motion to quash may be based on one or more of the following grounds:
(1) The indictment fails to charge an offense which is punishable under a valid statute.
(2) The indictment fails to conform to the requirements of Chapters 1 and 2 of Title XIII. In such case the court may permit the district attorney to amend the indictment to correct the defect.
(3) The indictment is duplicitous or contains a misjoinder of defendants or offenses. In such case the court may permit the district attorney to sever the indictment into separate counts or separate indictments.
(4) The district attorney failed to furnish a sufficient bill of particulars when ordered to do so by the court. In such case the court may overrule the motion if a sufficient bill of particulars is furnished within the delay fixed by the court.
(5) A bill of particulars has shown a ground for quashing the indictment under Article 485.
(6) Trial for the offense charged would constitute double jeopardy.
(7) The time limitation for the institution of prosecution or for the commencement of trial has expired.
(8) The court has no jurisdiction of the offense charged.
(9) The general venire or the petit jury venire was improperly drawn, selected, or constituted.”
C.Cr.P. 533 provides special grounds to quash a grand jury indictment when there exists some illegality with reference to the grand jury itself.