870 So.2d 1075 (2004)
STATE of Louisiana
v.
Johnny L. FRAZIER.
No. 03-KA-1219.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 2004.
Jane L. Beebe, Louisiana Appellate Project, Gretna, LA, for Appellant.
*1076 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Thomas J. Butler, Counsel of Record on Appeal, Terry M. Boudreaux, Appellate Counsel, Roger Jordan, Trial Counsel, Assistant District Attorneys, Gretna, LA, for Appellee.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and WALTER J. ROTHSCHILD.
JAMES L. CANNELLA, Judge.
The Defendant, Johnny Frazier, appeals from his conviction of distribution of cocaine. We affirm his conviction, amend his sentence and remand.
In a bill of information, the Defendant was charged on January 8, 1999 with distribution of cocaine, a violation of La. R.S. 40:967(A) and he pled not guilty. He filed several pre-trial motions, including a motion to suppress his statement, which was denied after a hearing. The 12 person jury trial was held on August 12, 2003 and he was found guilty as charged. He was thereafter sentenced to 12 years imprisonment at hard labor, without the benefit of parole, probation or suspension of sentence.
On the afternoon of December 15, 1998, Officer Louis Weaver of the Westwego Police Department was involved with Lieutenant Van Paul Plaisance in an undercover operation to enforce prostitution laws along Fourth Street. The two officers were in unmarked pickup trucks and dressed in plain clothes. Officer Weaver's truck was equipped with a one-way transmitter and Lt. Plaisance's with the receiver. At approximately 4:00 p.m., Officer Weaver was flagged down by a black male, later identified as the Defendant, in a parking lot who said, "I got it right here." Officer Weaver believed that the Defendant wanted to sell him drugs and advised Lt. Plaisance of the contact over the transmitter. Officer Weaver left the area to meet with Lt. Plaisance who gave Officer Weaver a marked $20 bill. He returned to the area where the Defendant flagged him down again. When the Defendant approached the truck, Officer Weaver said he would take a "20." The Defendant spit two rocks out of his mouth and Officer Weaver gave him the marked $20 bill. He then signaled Lt. Plaisance that the purchase was complete and started to leave the area.
Lt. Plaisance immediately arrived at the scene. When he exited his truck, the Defendant started to run. Lt. Plaisance gave chase and hit his emergency button. Officer Weaver returned to the scene and also chased the Defendant, who was apprehended and advised of his rights. The 2 rocks were tested and determined to be crack cocaine
After his arrest, the Defendant gave a recorded and video taped statement to the police in which he claimed that he was given rocks of cocaine to give to somebody else. He admitted that the person to whom he gave the rocks gave him something in exchange.
The sole error assigned by the Defendant on appeal is that he was denied his right to present a defense. The Defendant argues that his defense to the charge was that the substance obtained in the transaction with the officer was not cocaine. The Defendant contends that he spoke to a chemist who indicated that there is a great likelihood that an error could be made in testing a substance for cocaine. However, the State lost the physical evidence and he was not able to test the substance. The Defendant contends that the inability to test the substance due to the substance's unavailability denied him his right to present a defense.
*1077 Prior to trial, the Defendant filed two motions for discovery and a bill of particulars. The first motion for discovery was filed on January 26, 1999, approximately one and a half years before the Defendant was arraigned.[1] A minute entry dated July 18, 2000 indicates that the Defendant received the discovery. The trial was scheduled for September 5, 2000, but the Defendant failed to appear and an attachment was issued for his arrest. He subsequently appeared for trial on May 19, 2003. At that time, the matter was continued at the request of the Defendant. Twice more on motion of the Defendant the trial was continued. After the second continuance on June 25, 2003, retained counsel for the Defendant filed another request for discovery and a bill of particulars, specifically requesting information relating to the State's testing of any physical evidence. The trial was reset for August 12, 2003. No response by the State to the second discovery request appears in the record.
On the day of trial, the Defendant's appointed counsel made an oral motion for the production of the cocaine for independent testing.[2] The prosecutor admitted that the Defendant had the right to test the evidence if it were available, but stated that the State did not have the evidence. Since the evidence was unavailable, the trial judge ruled that she could not order the State to produce it. The Defendant stated that he could not see how the case could go forward if he could not analyze the evidence. The trial judge replied that the lack of evidence went to the State's burden of proof and that she would allow the trial to proceed.
Both the Sixth Amendment of the United States Constitution and Louisiana Constitution, Article I, Section 16, provide that a criminal defendant has the right to present a defense. La.C.Cr.P. art. 718 allows a defendant, upon motion, to scientifically test tangible objects within the possession, custody or control of the state which "(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or (2) are intended for use by the state as evidence at the trial, or (3) were obtained from or belong to the defendant."
In State v. Clark, 414 So.2d 737, 740 (La.1982), the Louisiana Supreme Court recognized that:
Fundamental fairness is violated when a criminal defendant on trial for his liberty is denied the opportunity to have an expert of his choosing, bound by appropriate safeguards imposed by the Court, examine a piece of critical evidence whose nature is subject to varying expert opinion....
Thus, where there is a sufficient amount of the evidence, a defendant should be permitted to conduct an independent examination. Id., citing State v. Migliore, 261 La. 722, 260 So.2d 682 (1972).[3] However, the "unavailability of the evidence for further testing does not in itself so prejudice defendant's right to a fair trial so as to warrant a dismissal of the prosecution." Clark, 414 So.2d at 741.
In Clark, the defendant in an aggravated rape case filed a motion to quash the bill of information on the ground that the state failed to preserve a bedsheet containing *1078 a large seminal stain, vaginal swabs and washings from a rape kit. The evidence was examined and analyzed by the state at its crime lab. The defendant received the results of the testing and employed two experts. However, the defendant's experts could not test the evidence because the test tube containing the vaginal washings was broken, the slide containing the sample could not be found and the bedsheet was not frozen which, according to the defendant's experts, caused the enzyme properties of the seminal stain to deteriorate rapidly. Thus, the defendant argued that he was prevented from running further tests that could rule him out as the perpetrator of the offense.
The trial judge found that the state was negligent in failing to properly preserve the evidence for further testing and quashed the indictment. The Louisiana Supreme Court reversed, finding that "mere negligence in preserving evidence, which prevents testing by defendant for possible exonerating characteristics, is not such a denial of fundamental fairness that the prosecution must be dismissed." Clark, 414 So.2d at 741. The Court further stated that the defendant could present evidence to show the inconclusive nature of the tests preformed at the crime lab and that the jury should be allowed to evaluate the testimony and determine what weight to give it.
The Court relied on State v. Boyd, 359 So.2d 931 (La.1978) in reaching its decision. In Boyd, the defendant moved for a mistrial on the ground that he was denied the opportunity to make an independent examination of a blood sample taken off his pants because the entire sample was consumed by the tests conducted by the state. The Court found no error in the trial court's denial of defendant's motion for mistrial.
In State v. Tuesno, 456 So.2d 186, 190 (La.App. 4th Cir.1984), the Fourth Circuit found no error in the trial court's refusal to quash the indictment on the basis that the defendant was unable to inspect the evidence of stolen meat prior to its disposal. The defendant was charged with possession of the stolen meat, valued in excess of $500. The defendant claimed that he was prevented from preparing a defense as to the evidence's value which was an essential element of the crime. The Fourth Circuit found that the defendant was not prejudiced by his inability to examine the meat because the defendant had an adequate opportunity to cross-examine witnesses who testified to its value. The Court noted that the defendant was successful on cross-examination because the jury found defendant guilty of a lesser crime, possession of stolen property valued between $100 and $500.
We first note that the Defendant had notice of the testing of the evidence and its results by July 18, 2000, the date on which the minute entry indicates that the Defendant had received a response to his discovery motions.[4] During the next three years, the Defendant never requested the evidence in order to independently test it. Rather, he waited until the morning of trial to make such request. At some time, the evidence may have still been available. He should have taken adequate steps prior to the morning of trial to develop his defense.
Furthermore, the Defendant had the opportunity at trial to challenge the identification of the substance, which he did by thoroughly cross-examining Daniel Waguespack (Waguespack), the State's forensic testing expert. He explored the margin of error in the State's testing process and *1079 elicited an admission from Waguespack that it was possible a mistake could have been made. Thus, despite being unable to independently test the evidence, he was able to cast doubt on the State's conclusion that the substance at issue was cocaine. Although he could have bolstered his defense by presenting his own expert to challenge the validity of the State's testing process and its conclusions, he did not do so.
In addition, the forensic expert's testimony was not the only testimony regarding the substance of the evidence as cocaine. The Defendant himself admitted that he was involved in the sale of narcotics. He explained that he was given "drugs" to give to somebody else. When asked what type of narcotics he gave, the Defendant replied, "[s]upposedly rocks.... Supposed to be cocaine."
Based on the above, we conclude that the Defendant was not prevented from presenting his defense or suffered any prejudice warranting a reversal of his conviction as a result of his inability to independently test the evidence.
PATENT ERROR
We have reviewed the record for patent errors pursuant to the Defendants request and in accordance with La.C.Cr.P. art. 920. See: State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198.
First, we note that the Defendant received an illegal sentence. The Defendant was sentenced to 12 years imprisonment at hard labor, without the benefit of parole, probation or suspension of sentence for distribution of cocaine, a violation of La.R.S. 40:967(A). The statute in effect at the time of the Defendant's offense in 1998 provided for a penalty ranging from five to 30 years of imprisonment, with only the first five years of the sentence being served without the benefit of parole, probation or suspension of sentence. La.R.S. 40:967(B)(4)(b). Thus, the imposition of the Defendant's entire sentence without benefit of parole, probation or suspension of sentence was illegal.
An illegal sentence may be corrected at any time by the Court that imposed the sentence or by an appellate court on review. La.C.Cr.P. art. 882. Accordingly, we order the sentence to be amended to reflect that only the first five years of the Defendant's 12 year sentence be served without benefit of parole, probation of suspension of sentence. See, State v. Raines, 00-1941, pgs. 13-14 (La.App. 5th Cir.5/30/01), 788 So.2d 635, 644, writ denied, 01-1906 (La.5/10/02), 815 So.2d 833.
Second, the minute entry reflects that the Defendant was advised of the two year prescriptive period for filing an application for post-conviction relief, as required by La.C.Cr.P. art. 930.8. However, the transcript shows that he was not so advised. Where there is a discrepancy between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Thus, we remand the case with an order for the trial judge to send written notice to the Defendant of the prescriptive period for filing an application for post-conviction relief, along with a notice of when the period begins to run, within ten days of the rendering of this opinion, then to file written proof in the record that the Defendant received the notice. See: State v. Esteen, 01-879, p. 28 (La.App. 5th Cir.5/15/02), 821 So.2d 60, 78.
Accordingly, the Defendant's conviction is affirmed and his sentence is amended to be served without benefit of parole, probation, or suspension of sentence for the first five years only. We remand the case with an order to the trial judge to send to the *1080 Defendant within ten days of the rendering of this opinion, written notice of the prescriptive period for post-conviction relief, along with a notice of when the period begins to run, and then to file written proof in the record that the Defendant received the notice.
CONVICTION AFFIRMED; SENTENCE AMENDED; CASE REMANDED.
NOTES
[1] The Defendant did not appear for his first arraignment date on February 17, 1999. An attachment was issued for his arrest and he was finally arraigned on May 17, 2000.
[2] Retained counsel enrolled in the case on June 25, 2003 and withdrew on July 8, 2003. The trial judge then appointed counsel to defend the Defendant.
[3] State v. Migliore was decided prior to the enactment of La.C.Cr.P. art. 718 which was added to the Louisiana Code of Criminal Procedure in 1977.
[4] The report containing the test results is dated August 18, 1999.