|,THOMAS F. DALEY, Judge.
Defendant Timothy P. MacCracken appeals his conviction of one count of illegal possession of stolen things valued at over $500.00 in violation of LSA-R.S. 14:69 and *1107 five counts of purse snatching in violation of LSA-R.S. 14:65.1. We affirm.
On appeal, defendant makes six Assignments of Error:
1. The trial court was clearly wrong or manifestly erroneous when it denied the defense’s motion to declare defendant incompetent to proceed at trial.
2. The trial court was clearly wrong or manifestly erroneous when it failed to suppress the evidence on the basis that defendant’s arrest was illegally obtained.
3. The trial court was clearly wrong or manifestly erroneous when it did not allow defense counsel to withdraw.
4. The trial court was clearly wrong or manifestly erroneous when it failed to recuse the Jefferson Parish District Attorney’s office.
5. The trial court was clearly wrong or manifestly erroneous when it failed to suppress defendant’s confession.
6. The trial court was clearly wrong or manifestly erroneous when it failed to suppress the identification of the defendant.

J¿PROCEDURAL HISTORY

On August 7, 2001, the Jefferson Parish District Attorney’s Office filed a Bill of Information charging defendant, Timothy MacCracken, with one count of illegal possession of stolen things valued at over $500.00 in violation of LSA-R.S. 14:69 and five counts of purse snatching in violation of LSA-R.S. 14:65.1. On August 8, 2001, defendant was arraigned on the charges and pled not guilty. On January 15, 2002, defendant’s previously filed Motion to Re-cuse the Jefferson Parish District Attorney’s Office from prosecuting his case was heard and denied. Defendant thereafter applied to this Court for a Supervisory Writ seeking review of the trial court’s ruling on the Motion to Recuse the Jefferson Parish District Attorney’s Office. The writ was denied. On February 7, 2002, defendant filed a Motion to Appoint a Sanity Commission. On April 3, 2002, a competency hearing was held and defendant was ruled competent to stand trial. On June 13, 2002, defendant’s previously filed motions to suppress evidence, identification, and statements were heard and denied. On June 17, 2002, defense counsel’s Motion to Withdraw, defendant’s Motion to Continue and Motion to Suppress Evidence were heard and denied.
On June 18, 2002, the day of trial, defendant withdrew his former plea of not guilty and entered a plea of guilty to one count of possession of stolen things valued at $500.00 or greater and five counts of purse snatching. Defendant’s guilty plea was made under the provisions of North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) and State v. Crosby, 338 So.2d 584 (La.1976). Defendant was sentenced to ten years at hard labor for possession of stolen things and twenty years at hard labor on each count of purse snatching. The sentences were ordered to run concurrently with one another and any other sentences.
l4The State thereafter filed a multiple offender Bill of Information alleging defendant to be a second felony offender. Defendant entered an admission to the allegations contained in the multiple offender ■bill and was found to be a second felony offender. The trial court vacated the previous sentence and imposed a sentence of twenty years at hard labor without benefit of probation or suspension of sentence to run concurrently with any other sentence.[1] *1108 On June 21, 2002, defendant filed a timely Motion for Appeal.

FACTS

Because the defendant pled guilty, the fact narrative was taken from testimony given at various suppression hearings. Lisa McClendon, a deputy with the Jefferson Parish Sheriffs Office, testified that, on June 16, 2001, she was on patrol when she recognized the license plate on a vehicle parked at the E-Z Serve at Transcontinental as belonging to a vehicle that had been reported stolen. Deputy McClendon noticed four individuals inside of the vehicle. Deputy McClendon ordered the occupants out of the car at which time defendant and another individual, Mark Cambre, exited the vehicle. Deputy McClendon then ordered defendant and Cambre to walk to the back of the stolen vehicle and to lie on the ground. After defendant and Cambre were lying on the ground, the vehicle from which they had exited sped off. Deputy McClendon remained with defendant and Cambre and placed them under arrest for possession of stolen things and transported them to the Jefferson Parish Detective Bureau.
Sergeant Scott Fontaine of the Jefferson Parish Sheriffs Office Robbery Division testified that he was assigned to investigate a series of robberies that occurred in Jefferson Parish. As a result of his investigation, Sergeant Fontaine had been able to identify defendant as a suspect in connection with the robberies. | R On June 16, 2001, Sergeant Fontaine, after advising defendant of his constitutional rights and-obtaining a written waiver of those rights, obtained a statement from defendant detailing his involvement in four purse snatchings. Sergeant Fontaine testified that, during the course of his interview of defendant, defendant turned over to him numerous credit cards containing the names of victims of the purse snatchings. Sergeant Fontaine also testified that pursuant to his investigation, he was able to present a photographic lineup to one victim who positively identified defendant as the perpetrator.
Detective John Carroll of the Jefferson Parish Sheriffs Office testified that, after obtaining a signed waiver of defendant’s constitutional rights, he obtained a statement from defendant concerning another purse snatching. In the statement, defendant indicated his involvement in the robbery of an elderly gentleman that occurred on June 18, 2001.
Detective Sergeant Joseph Picone of the Jefferson Parish Sheriffs Office testified that, as part of his investigation of the robberies, he presented a photographic lineup to two Wal-Mart cashiers who witnessed one of the robberies. The witnesses, after individually being shown the photographic lineup, both positively identified defendant.

ASSIGNMENTS OF ERROR NUMBER ONE

The trial court was clearly wrong or manifestly erroneous when it denied the defense’s motion to declare defendant incompetent to proceed at trial.
Louisiana law provides that “[mjental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.” LSA-C.Cr.P. art. 641.
|fiIn the lead case on mental capacity, State v. Bennett, 345 So.2d 1129 (La.1977) on reh’g, 345 So.2d 1129, 1138 (La.1977), the Louisiana Supreme Court discussed factors to be considered in determining whether the accused is aware of the nature of the proceedings against him and his ability to assist in his defense:
*1109 Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understands the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused’s ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
State v. Bennett, 345 So.2d at 1138.
Louisiana law presumes that a defendant is competent to proceed. Defendant has the burden to prove his incapacity to stand trial by a preponderance of the evidence. State v. Carmouche, 01-0405 (La.5/14/02), — So.2d -, 2002 WL 984306. A trial court’s determination of competency will not be overturned on appeal absent abuse of the trial court’s vast discretion. State v. Castleberry, 98-1388 (La.4/13/99), 758 So.2d 749, cert denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999).
Defendant filed a Motion to Appoint Sanity Commission to Determine Defendant’s Competency to Stand Trial on February 7, 2002. The trial court granted the Motion and appointed Dr. Richard Ri-choux and Dr. Rafael Salcedo to examine MacCracken and report their findings and opinions at a hearing set for April 3, 2002. Both doctors testified regarding their examinations of the defendant. His past psychiatric history was noted (primarily depression and |7substance abuse), although the doctors deemed this history not relevant to the defendant’s present ability to understand the charges against him and aid his counsel in his defense. Dr. Salcedo found that defendant met all of the Bennett criteria and found defendant competent to stand trial, saying that it was not even a “close call.” Dr. Richoux concurred in Dr. Salcedo’s findings and opinions.
Thereafter, the defendant took the stand and disputed the doctors’ testimonies regarding the length of time of their examination, and noted that they misstated his marital status in their report. After the matter was submitted, the trial court found the defendant competent to stand trial and effectively assist counsel. The trial court noted, at a later hearing, that the defendant was conferring with counsel all through the sanity hearing and participating in the proceeding.
Our review of the record shows that the trial court did not abuse its vast discretion when it found the defendant competent to stand trial. This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER TWO

Defendant argues that probable cause did not exist for his arrest and any resulting evidence should have been suppressed as “fruit of the poisonous tree.” The State responds that probable cause existed for defendant’s arrest and defendant’s argu *1110 ments to the contrary are devoid of both factual and legal support.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. War-rantless searches and seizures are considered unreasonable per se, unless justified by a specific exception to the warrant requirement.[2] A warrantless arrest |Rin a public place is not “illegal” if there is probable cause.[3] Probable cause to arrest exists when the facts and circumstances within an officer’s knowledge, and of which he has reasonable trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed or is committing a crime.[4] An arrest without probable cause is illegal and the seizure of evidence pursuant thereto is also illegal.[5]
Defendant initially argues that Deputy McClendon’s testimony, as it concerns the facts surrounding defendant’s arrest, is “suspect.” Defendant contends that he was never inside or near the stolen vehicle at the time the arresting officer arrived on the scene. In support of his version of events, defendant refers to the affidavit of Mark Cambre, attached as Exhibit “A” to defendant’s brief, which was given on June 19, 2002, the day after defendant accepted the plea agreement. Additionally, defendant argues that Deputy McClendon s testimony is further discredited because the defendant’s criminal history report filed by McClendon (attached to defendant’s brief as Exhibit “B”) indicates that he was arrested for outstanding municipal or traffic attachments and not for possession of stolen property. Cam-bre’s affidavit and defendant’s criminal history report were not introduced into evidence at any trial court proceeding and as such are not a part of the record. Both the Louisiana Supreme Court and this Court have recognized that courts of appeal have no authority to receive or review evidence not contained in the district court record.[6] Thus, the only evidence concerning defendant’s arrest was the testimony of Deputy Lisa McClendon.
Deputy McClendon testified that, on June 16, 2001, she observed a vehicle parked at an E-Z Serve on Transcontinental. Deputy McClendon recognized the | pvehicle because the vehicle’s license plate number had been broadcast numerous times over her police radio as belonging to a stolen vehicle. Deputy McClendon observed four individuals seated in the vehicle and proceeded to call for back-up. She then ordered the four occupants out of the vehicle. Defendant and Cambre exited the vehicle and Deputy McClendon ordered them to lie on the ground after which the stolen vehicle sped off. Deputy McClen-don then placed defendant and Cambre *1111 under arrest for possession of stolen things.
During cross-examination, defense counsel asked Deputy McClendon if she noticed defendant and Cambre near a payphone outside of the car or whether she had noticed them carrying anything they had purchased from the store to which Deputy McClendon responded in the negative. Defense counsel then questioned McClen-don as to the specific charge for which defendant was arrested. Deputy McClen-don testified that both defendant and Cam-bre were detained for the possession of a stolen vehicle. Defense counsel then referred Deputy McClendon to defendant’s criminal history report, which was not introduced into evidence at the suppression hearing, but which is attached to defendant’s brief as Exhibit “B.” Referring to the report, defense counsel suggested that Deputy McClendon arrested defendant on two municipal traffic attachments. Deputy McClendon, however, testified that she did not recall arresting defendant for any attachments and that defendant was arrested for possession of a stolen vehicle. Even if this Court were to consider defendant’s criminal history report improperly attached as an exhibit, it is clear that the report indicates that Deputy McClendon placed defendant under arrest for possession of a stolen vehicle and not for traffic attachments as argued by defendant.
Additionally, defendant argues that Deputy McClendon’s testimony is further discredited because the occupants of the stolen vehicle could not have driven off as Deputy McClendon testified because the deputy’s vehicle was inj^front of the stolen ear and the defendant and Cambre were on the ground behind the stolen car. However, Deputy McClendon’s testimony reveals that defendant and Cambre were six feet behind the stolen vehicle. Such a distance does not appear to prohibit the occurrence of events in the manner described by Deputy McClendon.
Based on Deputy McClendon’s testimony that defendant was an occupant in a stolen vehicle and the lack of any evidence to the contrary, the trial court did not err in finding probable cause for defendant’s arrest and denying defendant’s Motion to Suppress.

ASSIGNMENTS OF ERROR NUMBER THREE

Defendant contends that the trial court was clearly wrong when it did not allow defense counsel to withdraw. The record shows that on June 17, 2002, the day before trial, defendant informed the trial court that he wanted to fire his trial counsel, citing reasons ranging from deceit to incompetency. The trial court ruled that defense counsel would not be permitted to withdraw the day before trial and noted the lengthy procedural delays in the case attributable to the defendant.
Generally, a criminal defendant has the right to counsel of his choice. State v. Leggett, 363 So.2d 434, 436 (La.1978). A defendant, however, must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings. State v. Bridgewater, 00-1529 (La.1/15/02), 823 So.2d 877. The defendant’s right to counsel of his choice “cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice.” State v. Zapata, 97-1230 (La.App. 5 Cir. 5/27/98), 713 So.2d 1152, 1161, writ denied, 98-1766 (La.11/6/98), 727 So.2d 443. The issue of withdrawal of counsel largely rests with the discretion of Inthe trial court, and the court’s ruling will not be disturbed in the absence of a clear showing of abuse of discretion. Id. at 1161.
*1112 After reviewing the record and applicable law, we find that the trial court did not abuse its discretion in refusing to permit defense counsel to withdraw. As the trial court noted, the defendant had already discharged one retained attorney and was seeking to replace his second attorney the day before trial. Counsel for defendant informed the trial court that he was willing to remain on the case, was prepared to complete the motion hearings, and was ready to proceed to trial. Therefore, the record supports the trial court’s conclusion that the defendant’s attempt to discharge his current counsel was a delay tactic designed to force a continuance of the trial and delay resolution of the case. We find no merit to this Assignment of Error.

ASSIGNMENTS OF ERROR NUMBER FOUR

The trial court was clearly wrong or manifestly erroneous when it failed to re-cuse the Jefferson Parish District Attorney’s Office.
By this Assignment of Error, the defendant alleges that the Jefferson Parish District Attorney’s Office had a personal interest in the case that conflicts with the fair and impartial administration of justice. Specifically, he argues that his father, Calvin MacCracken, is employed by the District Attorney’s Office as an investigator, and was, therefore, concerned about the appearance of impropriety.
Defendant’s Motion to Recuse was heard on January 15, 2002. The trial court denied the Motion. Thereafter, the defendant filed an Application for Supervisory Writ in this court seeking review of the trial court’s ruling. This Court denied the writ, finding an insufficient basis on which to disturb the ruling of the trial court, and specifically finding that under LSA-C.Cr.P. art. 680, defendant had | ^failed to show that the District Attorney’s Office had a personal interest in the cause.
LSA-C.Cr.P. art 680 provides that:
A district attorney shall be recused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice;
(2) Is related to the party accused or to the party injured, or to the spouse of the accused or party injured, or to a party who is a focus of a grand jury investigation, to such an extent that it may appreciably influence him in the performance of the duties of his office; or
(3) Has been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney.
The defendant bears the burden of showing by a preponderance of the evidence that the district attorney has a personal interest in conflict with the fair and impartial administration of justice. State v. Guidroz, 98-377 (La.App. 5 Cir. 10/14/98), 721 So.2d 480, 485, writ denied, 98-2874 (La.2/26/99), 738 So.2d 1061 (quoting State v. Bourque, 622 So.2d 198, 216-217 (La.1993).)
Our review of the record establishes that the trial court correctly determined that the defendant did not satisfy his burden in the instant case. First, though Calvin MacCracken was employed as an investigator with the DA’s office at the time of the relevant proceedings, all of his assignments related to Juvenile Court. Mr. MacCracken never worked in the Felony Division and never worked on any case involving his son or a co-defendant or his son relative to this case. Additionally, when Mr. MacCracken was asked if he were aware of any reason that the DA’s *1113 office wanted to maintain the prosecution of his son’s case in the instant matter, he answered no. He could not suggest any bias or personal interest in his son’s case that would support a recusal of the office. Defendant faded to demonstrate ground for recusal based upon his father’s employment with the prosecuting office.
| ^Defendant bolsters his argument by pointing out that the DA’s office recused itself in a previous prosecution of defendant, and therefore recusal is required in this matter also. The record shows that the DA’s office recused itself voluntarily in a prior prosecution of defendant just before District Attorney Paul Connick took office. No grounds were stated for the recusal, and the trial court appointed the Attorney General’s office to represent the State. Mr. Calvin MacCracken testified to his subjective belief that the previous recu-sal occurred because of an office policy of Mr. Connick to defer prosecution of the family members of employees to the Attorney General’s Office. Defendant’s mother also testified regarding her impression of the reasons for the recusal, but neither witness has personal knowledge as to the definitive grounds under which the DA’s office sought recusal in the previous case.
The record fails to show that the DA’s Office had a personal interest in the case that was in conflict with the fair and impartial administration of justice. This Assignment of Error has no merit.

ASSIGNMENT OF ERROR NUMBER FIVE

Defendant argues that the trial court erred in denying his Motion to Suppress evidence because defendant’s statements were not voluntarily given because he had not slept in five days and was heavily under the influence of crack cocaine and alcohol. The State responds that defendant failed to demonstrate that drugs or alcohol were present in his system when he gave his statements or that any substance negated his comprehension and rendered him unconscious of the ramifications of his statements.
In State v. Robinson, 384 So.2d 332, 335 (La.1980), the Louisiana Supreme Court addressed the issue of intoxication when challenging the admissibility of a confession:
luWhere the free and voluntary nature of a confession is challenged on the ground that the accused was intoxicated at the time of interrogation, the confession will be rendered inadmissible only when the intoxication is of such a degree as to negate defendant’s comprehension and to render him unconscious of the consequences of what he is saying. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact. State v. Rankin, 357 So.2d 803 (La.1978). The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on credibility and weight of the testimony relating to the voluntariness of a confession will not be overturned unless they are not supported by the evidence. State v. Hutto, 349 So.2d 318 (La.1977).
In the present case, defendant argues that his confession should be suppressed because it was not voluntarily given due to the facts that he had not slept in five days and was heavily under the influence of crack cocaine and alcohol.[7] Defen- *1114 dant s first statement, the only one directly addressed in defendant’s brief, was given to Sergeant Scott Fontaine on June 16, 2001, the day of defendant’s arrest for possession of a stolen vehicle. At the hearing on defendant’s Motion to Suppress, Sergeant Fontaine testified that he advised defendant of his constitutional rights and reviewed an advice of rights form with the defendant. Sergeant Fon-taine testified that defendant gave no indication that he did not understand any of his rights or what was being explained to him. On cross-examination, Sergeant Fontaine testified that he did not recall defendant mentioning his recent alcohol or drug intake nor did he recall defendant making any comments concerning his sleep deprivation, although defendant did mention he had a drug addiction. When asked by defense counsel if defendant appeared incoherent, Sergeant Fontaine responded, “To me, he did not appear incoherent at all.” It should also be noted that the arresting officer, Deputy McClendon, testified at a subsequent unrelated Motion to Suppress evidence that defendant did not appear to be disoriented at the time of his arrest.
lisA case that addressed a similar issue is State v. Quest, supra. In Quest, defendant sought to suppress his confession claiming that he was under the influence of heroin at the time of his statement. This Court held that the trial court did not err in finding a statement was freely and voluntarily given reasoning that while defendant had stated that he had use heroin some six hours earlier that day, the investigating officers did not perceive any evidence of defendant’s intoxication. The interviewing officers testified that defendant’s speech and ability to balance were normal and that the defendant appeared coherent and did not appear intoxicated.
In the present case, although there was some evidence that defendant may have been under the influence of drugs or alcohol at the time his first statement was taken, it appears that the State presented sufficient evidence that defendant’s statements were freely and voluntarily given. Like Quest, the investigating officers testified that defendant did not appear incoherent or intoxicated. Thus, it does not appear that the trial judge erred in denying the defendant’s Motion to Suppress his confession.

ASSIGNMENT OF ERROR NUMBER SIX

Defendant contends that the trial court erred when it failed to suppress a photographic lineup identification of the defendant by a purse snatching victim because of discrepancies in the victim’s initial description and defendant’s photograph as presented in the photographic lineup. The State responds that the trial court did not err because the identification procedure was not suggestive, nor was there a likelihood of misidentification as a result of the identification procedure.
A defendant who seeks to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of | ir,misidentification as a result of the identification procedure.[8] Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony.[9] Even if the identification could be considered suggestive, it is the likelihood of misidentification which vio *1115 lates due process, not merely the suggestive identification procedure.[10]
A photographic lineup is considered suggestive if the photographs display the defendant in such a manner that the witness’s attention is unduly focused on the defendant. A lineup is also suggestive if there is not a sufficient resemblance of characteristics and features of the persons in the lineup.[11]
In Manson v. Brathwaite,[12] the United States Supreme Court set forth five factors to consider in determining if an identification is rehable: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness’ degree of attention; 3) the accuracy of the prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation. A trial court’s determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion. Id.
Defendant contends that the lineup was unduly suggestive because of asserted discrepancies in the initial description of one of the two perpetrators and defendant’s actual description. In support of his argument, defendant attaches |17pages of a police report not introduced into evidence, but attached to defendant’s brief as Exhibit “D” in which the victim gave a description of two suspects involved in the purse snatching. As previously noted, courts of appeal have no authority to receive or review evidence not contained in the district court record.[13] Therefore, the only evidence available to this Court concerning the identification is the testimony of Sergeant Fontaine and any exhibits introduced in conjunction with his testimony.
Sergeant Fontaine testified that pursuant to his investigation he presented a photographic lineup to a victim of one of the purse snatehings, Rosemary Heirseh, on June 19, 2001. The photographic lineup, which was introduced into evidence as State’s Exhibit Number Three, consisted of an array of six photographs, one of which was a photograph of defendant. The photographs were of white males sharing similar characteristics such as hair and eye color. Fontaine testified that he presented the lineup to Heirseh and asked her if she recognized anyone, at which time she immediately selected the photograph of defendant. Fontaine testified that he did nothing suggestive in order to have Heirseh select a photo from the lineup.
Based on the evidence at trial, it does not appear that the photographic lineup was suggestive. Accordingly, the trial judge did not err in denying defendant’s Motion to Suppress identification.

ERROR PATENT DISCUSSION

The review reveals two errors patent in this case.[14]
The State failed to specify in the multiple bill which of the five counts of purse snatching was being considered for *1116 enhanced sentence. The trial court, after having found defendant to be a multiple offender, vacated defendant’s previous | issentence and imposed an enhanced sentence without specifying which count was being enhanced. It appears from the record that, although the trial court meant to impose the enhanced sentence on one of the purse snatching counts, since that was the conviction referred to in the multiple bill, the indefinite reference to the “sentence of twenty years previously imposed is vacated” does not specify which of the five counts of purse snatching is being enhanced. Therefore, the matter is remanded to the trial court and the trial court is instructed to re-sentence defendant and in so doing clarify which of the defendants convictions is being vacated and enhanced. Finally, discrepancies appear to exist between the transcript and commitment/minute entry. The commitment/minute entry incorrectly states that defendant pled guilty to receiving stolen goods valued at $300.00 or greater instead of $500.00 or greater. Where there is a discrepancy between the transcript and the minute entry, the transcript will prevail.[15] As a result, this Court remands the matter to the trial court to amend the commitment/minute entry to conform to the transcript.[16]

AFFIRMED AND REMANDED.

. The record does not indicate which count was enhanced under the multiple offender Bill of Information. The matter is addressed in the Errors Patent Discussion.

. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); State v. Moreno, 619 So.2d 62, 66 (La.1993); State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 779, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866; State v. Green, 97-702 (La.App. 5 Cir. 12/30/97), 706 So.2d 536, 538.

. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); State v. Anthony, 98-0406 (La.4/11/00), 776 So.2d 376, 389, cert. denied, 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000).

. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, 1331, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Quest, 772 So.2d at 779.

. Id.; State v. Green, 706 So.2d at 538.

. State v. Oubichon, 422 So.2d 1140, 1141 (La.1982); State v. Bibb, 626 So.2d 913, 924 (La.App. 5 Cir.1993), writ denied, 93-3127 (La.9/16/94), 642 So.2d 188.

. Evidence of intoxication relied upon by defendant was extrapolated from his second statement to police taken on June 20, 2001 concerning the robbery of an elderly gentleman on June 13, 2001. Defendant stated that he had "been up for like four or five days smoking crack cocaine and drinking alcohol without sleeping, without stopping.” (State’s Exhibit Number Five). Defendant does not raise the issue of the voluntariness of his second statement in his brief.

. State v. Prudholm, 446 So.2d 729, 738 (La.1984); State v. Payne, 00-1171 (La.App. 5 Cir. 12/13/00), 777 So.2d 555, 558-559, writ denied, 01-118 (La.11/21/01), 802 So.2d 626.

. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 932, cert. denied, 99-8224 (5/15/00), 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000).

. State v. Biglane, 99-111 (La.App. 5 Cir. 5/19/99), 738 So.2d 630, 634.

. 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

. State v. Oubichon, 422 So.2d at 1141; State v. Bibb, 626 So.2d at 924.

. The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).

. State v. Lynch, 441 So.2d 732, 734 (La.1983); State v. Cowart, 01-1178 (La.App. 5 Cir. 3/26/02), 815 So.2d 275, 291.

. See, State v. Jones, 01-177 (La.App. 5 Cir. 10/17/01), 800 So.2d 958, 964.