924 So.2d 333 (2006)
STATE of Louisiana
v.
Winston J. DOUSSAN, Jr.
No. 05-KA-586.
Court of Appeal of Louisiana, Fifth Circuit.
February 14, 2006.
*335 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark, Donald *336 A. Rowan, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Jack E. Truitt, Nancy N. Butcher, Madisonville, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and MARION F. EDWARDS.
JAMES L. CANNELLA, Judge.
The Defendant, Winston J. Doussan, Jr., appeals from his conviction by guilty plea of possession of more than 60 pounds of marijuana, a violation of La.R.S. 40:966 F(1). We affirm and remand.
The Defendant was charged on April 10, 2003 with possession of more than sixty pounds of marijuana.[1] He pled not guilty at his arraignment on May 9, 2003. On August 25, 2003, after being advised of his rights,[2] the Defendant pled guilty as charged. He was sentenced to 12 years at hard labor. The Defendant then orally requested that the judge reconsider the sentence. The motion was granted on September 10, 2003, and the Defendant was re-sentenced to ten years at hard labor. On that date, the State filed a habitual offender bill of information, alleging the Defendant to be a second felony offender. The Defendant denied the allegations.
On December 15, 2003, the Defendant filed a Motion to Withdraw Guilty Plea, arguing that the State had violated the plea agreement by filing the habitual offender bill of information. A hearing was held on January 28, 2004. The trial judge granted the motion on February 3, 2004.
Subsequently, the Defendant filed various pre-trial motions, including a motion to suppress the evidence. The suppression motion was heard on March 16, 2004. On March 19, 2004, the trial judge denied the motion. The Defendant applied for writs to this Court, challenging the trial court's ruling. On May 10, 2004, this Court denied the writ application. See: State v. Winston J. Doussan, Jr., Writ Number 04-K-412.
On May 26, 2004, after being advised of his Boykin rights, the Defendant again pled guilty, but reserved his appeal rights under State v. Crosby, 338 So.2d 584 (La. 1976). The trial judge accepted the Defendant's guilty plea and sentenced him to fifteen years imprisonment at hard labor.

FACTS
In the suppression hearing, Agent John Ladd, a narcotics officer with the Jefferson Parish Sheriff's Office, testified that on January 8, 2003, he obtained a search warrant for Stonee's Studio, a music recording studio at 2717 Massachusetts Avenue in Metairie, Louisiana. The warrant was based on information from a confidential informant (CI) who stated that the Defendant, the studio's owner, was selling large quantities of marijuana on the premises. The CI claimed to have bought marijuana from the Defendant at the studio, and had recently told him that he had a supply of marijuana available for sale.
As a result of the information, on January 8, 2004, narcotics officers conducted surveillance of the music studio, while Agent Ladd prepared the search warrant application. Lieutenant Bruce Harrison supervised the surveillance. Beginning at about 9:00 p.m., he and several other officers *337 watched the studio from a vantage point located approximately a block away. The Lieutenant stayed in constant contact with Agent Ladd, relaying information about the activity which he observed.
According to the search warrant application, surveillance officers instructed the CI to go to the studio to make an undercover narcotics buy from the Defendant. The officers watched the CI enter and exit the studio within four minutes. Agent Louis Adams met with the CI at a prearranged location and gave him some green vegetable matter which he said he bought from the Defendant. Agent Adams field-tested the material and found it was positive for marijuana. Lieutenant Harrison confirmed that the buyer was the CI.
Lieutenant Harrison testified that he observed three more men enter the studio and leave. He recognized the next man as a local musician. He arrived three to four minutes after the CI left the studio. The musician left minutes later, but was followed by police officers, who performed a traffic stop, found him to be in possession of marijuana, and arrested him.
The Lieutenant saw a third man enter the studio and exit shortly thereafter. That person evaded officers' attempts to stop him. At that point, Lieutenant Harrison noticed that the Defendant appeared nervous, as he was repeatedly walking in and out of the studio. After a fourth man, later identified as Bill Schroeder (Schroeder), arrived and entered the studio, the officers became concerned that the Defendant might destroy evidence. Lieutenant Harrison also felt that he did not have the manpower to handle all of the foot traffic at the studio. Since Agent Ladd had not yet arrived with the search warrant, the Lieutenant conferred with Agent Ladd by radio, after which Lieutenant Harrison ordered his officers to secure the premises.
With guns drawn, the officers approached the Defendant, who was standing outside the studio. When he saw the officers, the Defendant fled up the steps of the building and into the studio, locking the door. The officers pounded on the door until the Defendant opened it, allowing them to enter. On Lieutenant Harrison's order, the officers performed a "protective sweep" of the premises to determine whether there was anyone inside the building who might cause them harm. During the sweep, they observed marijuana in plain view. The Defendant was arrested and advised of his Miranda[3] rights. Officers also conducted a "pat down" of the Defendant's clothing and discovered keys, money, and marijuana.
Lieutenant Harrison interviewed Schroeder who was still on the premises, but did not arrest him. Minutes after his officers secured the studio, the Lieutenant received word from Agent Ladd that the search warrant had been signed. Agent Ladd arrived at the scene with the signed warrant 10-15 minutes after the pat-down search. Agent Ladd stated that nothing was seized from the recording studio before he arrived.
When Agent Ladd arrived at the scene, he informed the Defendant about the investigation and presented him with a copy of the front page of the search warrant. The officers then began to search the premises. Agent Ladd testified that the search began at 10:15 p.m. Lieutenant Harrison recorded the search with a video camera and photographs.
Schroeder testified that he is a licensed satellite technician and a musician, who has done work at the Defendant's studio. Schroeder stated that he went to the *338 studio on January 8, 2003, in order to look at some equipment. He later walked out of the studio with the Defendant. He claimed that, as they stood talking on the landing, five or six men identifying themselves as police officers approached with guns drawn. Schroeder asserted that one of them pointed a gun at his face and told him to "assume the position." Schroeder was handcuffed and searched. Schroeder testified that the officers pounded on the studio door, threatening to break it down if the Defendant did not open it.
Schroeder was held outside on the landing when the officers entered the studio. However, he stated that he heard screaming and stomping inside the building. Schroeder claimed that, when he was brought inside the studio, he saw two to three officers "dog-piled" on the Defendant, and that other officers were going through various rooms, searching the Defendant's property. Schroeder asserted that, during the search, the officers pulled out bags of "stuff," and began hollering and laughing. When the Defendant said, "Well, I better get my lawyer," one of the officers replied, "[Y]our don't need to talk to your lawyer, just cooperate with us and everything will be okay." Schroeder stated that, after the officers discovered the bags, they said, "Let's go get a warrant." After asking him some questions about music, Lieutenant Harrison released Schroeder.

VALIDITY OF THE SEARCH AND SEIZURE
On appeal, the Defendant argues that the warrantless search of his business was invalid because the officers made an unlawful entry, and that the evidence seized in the pat-down search of his person should have been suppressed because it did not fall under the exclusionary rule exception for search incident to a valid arrest. The Defendant further contends that the illegal searches of his person and his studio were not cured by the subsequent issuance of the search warrant.
On March 19, 2004, the trial judge issued a written Judgment and Reasons denying the Defendant's motion to suppress the evidence. The judge stated:
The court is not satisfied that the State established the existence of exigent circumstances to justify a search. However, the second of four individuals observed entering and leaving Stonee Studio during the surveillance was stopped and arrested for possession of marijuana. The surveillance team believed that the marijuana was purchased from the defendant. The marijuana found on the second individual, plus the surveillance team's knowledge of the controlled buy by the confidential informant (C.I.) from the defendant within the 48 hours preceding the arrest, plus the information obtained from the C.I. and detailed as probable cause in the search warrant application (State's Exhibit A), combined with the observation of defendant's apparently nervous behavior going up and down the stairs, all add up to probable cause sufficient to justify a warrantless arrest of the defendant.
As police approached the defendant on the stairs, he ran into the studio, locked the door, but opened it and let police in shortly thereafter. The evidence was seized incidental to this arrest.
Secondly, the State was in the process of obtaining a search warrant. In a motion to suppress, the burden of proving that a search conducted with a warrant was unconstitutional is on the defendant. Although the time line in this case presents some uncertainty, the court is not convinced that the defendant has borne his burden of proving that the *339 warrant was defective, improper, or illegally obtained.[4]
The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Similarly, the Louisiana Constitution provides that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." La. Const. art. 1, § 5.
The Fourth Amendment has drawn a firm line at the entrance to the home, and a police officer therefore needs both probable cause to arrest or search and exigent circumstances to justify a non-consensual warrantless intrusion into a private premises. Kirk v. Louisiana, 536 U.S. 635, 637, 122 S.Ct. 2458, 2459, 153 L.Ed.2d 599 (2002) (per curiam) [referencing Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ]; State v. Brisban, 00-3437, p. 5 (La.2/26/02), 809 So.2d 923, 927-928. Business offices and stores are also protected areas under the Fourth Amendment. Lanza v. New York, 370 U.S. 139, 143, 82 S.Ct. 1218, 1220-1221, 8 L.Ed.2d 384 (1962).
"Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing the person to be arrested has committed a crime." State v. Wilson, 467 So.2d 503, 515 (La.1985), cert. denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985).
In this case, the officers had probable cause sufficient to justify a warrantless arrest when they entered the recording studio. By that time, the confidential informant had purchased marijuana from the Defendant inside the studio and told the officers that he had seen additional marijuana there. The officers also arrested a man immediately after he left the Defendant's studio who had marijuana in his possession.
The United States Supreme Court has defined exigent circumstances as "a plausible claim of specially pressing or urgent law enforcement need." Illinois v. McArthur, 531 U.S. 326, 331, 121 S.Ct. 946, 950, 148 L.Ed.2d 838 (2001). "Exigent circumstances may arise from the need to prevent the offender's escape, minimize the possibility of a violent confrontation which could cause injury to the officers and the public, and preserve evidence from destruction or concealment." Brisban, 00-3437 at p. 5, 809 So.2d at 927. See also, State v. Temple, 01-655, p. 11 (La. App. 5th Cir.12/12/01), 806 So.2d 697, 705, writ denied, 02-0234 (La.1/31/03), 836 So.2d 58.
Lieutenant Harrison decided to enter the recording studio before the warrant arrived partly based on the Defendant's furtive behavior. The Defendant went into and out of the studio several times, behaving in a nervous manner. Lieutenant Harrison was concerned because his surveillance team had been unable to apprehend the third man that had entered the studio. He feared that the man had contacted the Defendant and warned him of the police presence. This *340 led Lieutenant Harrison to suspect that the Defendant went into the studio to destroy evidence. The possibility that evidence will be destroyed by defendants who have discovered police surveillance of their activities has been recognized as an exigency sufficient to justify warrantless entry. State v. Hills, 01-0723, p. 7 (La.11/8/02), 829 So.2d 1027, 1031. See also, Roaden v. Kentucky, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973) ("Where there are exigent circumstances in which police action literally must be `now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation.")
At the suppression hearing, the Defendant cited Kirk in support of his argument. In Kirk, the police performed surveillance on the defendant's apartment upon receiving an anonymous citizen complaint that drugs were being sold there. They watched what appeared to be several drug transactions. The officers then stopped one of the buyers on the street outside of the defendant's apartment. Because they made the stop so close to the apartment, the officers feared the defendant now knew of their presence, and would destroy evidence. The officers immediately knocked on the door of the apartment, arrested the defendant, and searched him. They found a drug vial in the defendant's underwear. They also saw drugs in plain view inside the apartment. The officers then sought and obtained a search warrant. The search of the residence, resulted in the seizure of cocaine. On appeal, the Fourth Circuit affirmed the defendant's conviction, finding that exigent circumstances were not required for the entry, because the evidence used to prove the defendant was guilty of possession of cocaine with the intent to distribute was found on the defendant's person and not in the apartment. State v. Kirk, 00-0190, p. 4 (La.App. 4th Cir.11/15/00), 773 So.2d 259, 263. The Louisiana Supreme Court subsequently denied writs. State v. Kirk, 00-3395 (La.11/9/01), 801 So.2d 1063.
The United States Supreme Court reversed the Fourth Circuit's holding that exigent circumstances were not required to justify the officers' conduct. The Court held:
As [Payton v. New York] makes plain, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home. The Court of Appeal's ruling to the contrary, and consequent failure to assess whether exigent circumstances were present in this case, violated Payton.

Kirk v. Louisiana, 122 S.Ct. at 2459. The Supreme Court remanded the case to the Fourth Circuit, ordering the court to reconsider the trial court's ruling in light of the holding in Payton.
On remand, the Fourth Circuit reversed the trial court's ruling and held that there were insufficient exigent circumstances to justify a warrantless entry into the apartment. The court based its finding on the fact that the defendant remained in his apartment after police officers observed the drug transactions, and because the record lacked any evidence that the occupants of the apartment were aware of the police surveillance or the "take down" of one of the buyers near the apartment. State v. Kirk, 00-0190, pp. 3-4 (La.App. 4th Cir.11/13/02), 833 So.2d 418, 420.
In contrast to the facts in Kirk, the Defendant in the instant case was seen outside of his apartment acting in a nervous manner, after he sold marijuana to the confidential informant and to another man whom the officers stopped and arrested. That behavior, coupled with the officers' concern that the buyer who evaded *341 them might have contacted the Defendant to warn him of the police surveillance, distinguishes this case from the facts in Kirk.
This case is similar to State v. Wright, 02-2354 (La.App. 4th Cir.6/18/03), 850 So.2d 778. In Wright, Orleans Parish police detectives received word from an informant that illegal drugs were being sold from a particular house on Freret Street. During surveillance of the house, the officers saw Aaron Richardson (Wright's codefendant) standing outside of the residence. A man approached and handed Richardson some currency. Richardson then went into the house. He returned shortly after with a small object, which he gave to the unknown man, who then walked away. Fifteen minutes later, two women arrived in a vehicle. One went to the front door of the residence. An unknown man opened the door, accepted currency from her, and gave her two small objects. She returned to her vehicle and left the scene. Shortly after, a police backup team stopped the woman's vehicle. She and her companion were arrested for possession of two plastic bags containing marijuana. The surveillance officers also saw Richardson engage in another hand-to-hand transaction with an unknown man in front of the residence. Shortly thereafter, Wright exited the house. He was approached by an unknown man who gave him currency in exchange for a small object. Following these events, the officers observed an unknown woman look at their surveillance location, approach Wright and converse with him. After the conversation, Wright and Richardson ran into the residence. At that point the officers decided to enter the house without a warrant, because they feared the suspects would destroy evidence. Upon entering the residence, the officers saw drugs and handguns in plain view. They secured the house while a detective obtained a search warrant.
On appeal, the Fourth Circuit found exigent circumstances sufficient to justify a warrantless entry. The court based its holding on the fact that the surveillance officers had seen the defendant and Richardson conduct hand-to-hand transactions and subsequently found Gibson to be in possession of marijuana. The court also took into account Wright's flight into the house after speaking with the unknown woman. The court commented, "The detectives had reason to believe their surveillance position had been made known to the defendants, and that the defendants knowing they had been observed by police officers would destroy evidence." Wright, 02-2354 at p. 6, 850 So.2d at 781.
As was the case in Wright, the officers in this case were concerned that a particular individual had alerted the Defendant to their surveillance activity. As in Wright, the Defendant went inside, where the officers were unable to monitor his actions. Due to the Defendant's nervous behavior, the officers believed he was aware of their presence, and was destroying evidence. Based on the foregoing, we find that the there were exigent circumstances sufficient to support a valid entry.
In addition, the warrantless arrest was valid under State v. Cojoe, 01-2465 (La.10/25/02), 828 So.2d 1101. There, the Louisiana Supreme Court held that a warrantless arrest of a person in a public place, if based on probable cause, is valid under the Fourth Amendment, regardless of the presence or absence of exigent circumstances. Id. at 1108. See also, State v. MacCracken, 02-1163, pp. 7-8 (La.App. 5th Cir.4/29/03), 845 So.2d 1104, 1110, writ denied, 03-1474 (La.12/12/03), 860 So.2d 1150. Furthermore, when a suspect attempts to thwart an otherwise legal arrest in a public place by retreating to private *342 premises, an officer has the right to make a warrantless entry into that place to complete the arrest. United States v. Santana, 427 U.S. 38, 42-43, 96 S.Ct. 2406, 2409-2410, 49 L.Ed.2d 300 (1976). A "hot pursuit" need not involve an extended chase. It may include a chase that ends almost before it begins. Id.
When officers approached the Defendant outside of his business, they had probable cause to arrest him for distribution of marijuana. When the Defendant attempted to elude the officers by fleeing into his studio and locking the door, the officers were within their authority to enter the building to complete the arrest.
The Defendant next contends that the trial court should have suppressed the evidence (keys, money, and marijuana) seized from his person, as the officers exceeded the scope of a valid search incident to arrest. A search made without a warrant issued on probable cause is considered unreasonable unless it can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2044, 36 L.Ed.2d 854 (1973). One such exception is a search incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); State v. Tatum, 466 So.2d 29, 31 (La.1985). Police may conduct a warrantless search of a person they have legally arrested in order to discover and seize evidence of the crime. State v. Elliot, 407 So.2d 659, 661 (La.1981). Having arrested defendant on probable cause that he possessed illegal narcotics, the officers were justified in conducting a pat-down search to secure evidence of the crime. Id.
Defendant further contends that the officers' protective sweep of the studio was illegal. Another recognized exception to the search warrant requirement is a security check of the surrounding area immediately after an arrest. State v. Guiden, 399 So.2d 194, 199 (La.1981), cert. denied, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). In recognizing this exception, the Louisiana Supreme Court quoted United States v. Agapito, 620 F.2d 324, 336 (2nd Cir.1980), cert. denied, 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980). The court in Agapito stated:
The reasonableness of a security check is simple and straightforward. From the standpoint of the individual, the intrusion on his privacy is slight; the search is cursory in nature and is intended to uncover only `persons, not things.' Once the security check has been completed and the premises secured, no further search be it extended or limited is permitted until a warrant is obtained. From the standpoint of the public, its interest in a security check is weighty. The delay attendant upon obtaining a warrant could enable accomplices lurking in another room to destroy evidence. More important, the safety of the arresting officer or members of the public may be jeopardized. Weighing the public interest against the modest intrusion on the privacy of the individual, a security check conducted under the circumstances stated above satisfies the reasonableness requirement of the Fourth Amendment. (Citations omitted).
See also, State v. Narcisse, 01-49, p. 6 (La.App. 5th Cir.6/27/01), 791 So.2d 149, 153, writ denied, 01-2231 (La.6/14/02), 817 So.2d 1152.
The Defendant argues that, since the surveillance officers observed the comings and goings from the studio, they should have known there was no one inside the studio, and that there was no need for a protective sweep of the premises to *343 search for accomplices. Lieutenant Harrison testified that the surveillance began shortly before 9:00 p.m. Agent Ladd testified that the district court judge signed the search warrant at about 9:40 or 9:45 p.m. It appears from the testimony that the officers entered the business around that time, if not sooner. Therefore, the officers watched the studio for, at most, forty-five or fifty minutes. They could not have known whether anyone entered before the surveillance began. Thus, we find that the officers were justified in conducting a protective sweep of the premises for their own safety, and to prevent the destruction of evidence.
The Defendant argues that the officers exceeded the permissible scope of a protective search by seizing the contraband which they saw in the studio. While Bill Schroeder, the repairman, testified that the officers seized marijuana during the protective sweep, Agent Ladd testified that no evidence was seized from the studio until he arrived with the search warrant. The trial judge found Agent Ladd's testimony more credible than Schroeder's. When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. Bailey, 04-85 at p. 4, 875 So.2d at 955. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. State v. Marcantel, 00-1629, p. 9 (La.4/3/02), 815 So.2d 50, 56; Bailey, 04-85 at p. 5, 875 So.2d at 955.

PATENT ERROR
The record was reviewed for patent errors in accordance with La.C.Cr.P. art. 920. State v. Oliveaux, 312 So.2d 337, 338 (La.1975); State v. Frazier, 03-1219, p. 8 (La.App. 5th Cir.3/30/04), 870 So.2d 1075, 1079; writ denied, 04-1290 (La.10/29/04), 885 So.2d 584. We have found two errors, one requiring action by this Court.
The trial judge failed to properly advise the Defendant of the prescriptive period for applying for post-conviction relief under La.C.Cr.P. art. 930.8. At the time of sentencing, the judge stated, "You will have two years from the date your sentence becomes final to request post-conviction relief." The article provides that a defendant has two years "after the judgment of conviction and sentence has become final" in which to file a post-conviction relief application. (Emphasis supplied). Therefore, we will remand with instructions for the trial judge to send written notice to the Defendant within ten days of the rendition of this opinion of the correct statement of the law regarding the prescriptive period for post conviction relief, and to file written proof in the record that the Defendant received the notice. See: State v. Stewart, 04-1231, p. 15 (La. App. 5th Cir.4/26/05), 902 So.2d 440, 449.
We also note that the both the bill of information and the guilty plea appear to be ambiguous. However, an analysis of the record indicates that we need not vacate the plea.
The bill of information charges the Defendant with violating La.R.S. 40:966 F, "in excess of 60 pounds." However, that section has three sub-parts, and there is nothing in the record which states how much marijuana the Defendant possessed. At the time of the offense, Subpart (1) of that section pertained to possession of "sixty pounds or more, but less than two thousand pounds of marijuana." Subpart (2) pertained to possession of "two thousand pounds or more, but less than ten thousand pounds of marijuana." Subpart (3) pertained to possession of "ten thousand pounds or more of marijuana."
*344 The Louisiana Supreme Court recently stated that a guilty plea that is not responsive to the crime charged is not a jurisdictional defect requiring the plea to be vacated. State v. Jackson, 04-2863, p. 8 (La.11/29/05), 916 So.2d 1015 916 So.2d 1015, 1022-1023. The Court clarified the decision, stating:
This decision does not, however, alter the fundamental requirement that prosecution be properly instituted by bill of information that informs the accused of the nature of the accusations against him nor does it alter the requirement that a defendant's guilty plea be voluntarily and intelligently made. A nonresponsive guilty plea made without an amended bill might raise the concern that a defendant did not understand the nature of the charges against him. But such a fact is at best one of the totality of circumstances to consider while evaluating the Boykin colloquy.
By analogy to Jackson, we find that the defect in the bill of information is not a jurisdictional defect requiring the Court to vacate the plea.
A defendant who pleads guilty normally waives all non-jurisdictional defects in the proceedings leading up to the guilty plea, and precludes review of such defects either by appeal or post-conviction relief. State v. Leonard, 04-708, p. 5 (La. App. 5th Cir.12/14/04), 892 So.2d 66, 69. Since the Defendant pled guilty without objecting to the ambiguity in the bill of information, he waived the error.
The guilty plea is also ambiguous, because neither the plea transcript nor the commitment show which subpart of La. R.S. 40:966 F was the subject of the Defendant's guilty plea. However, the guilty plea form completed by the Defendant and his attorney states that the Defendant pled guilty to "40:966 C," 60-2,000 lbs." The weight range is specified, but the section of the statute was incorrectly written as "C" (which pertains to simple possession of marijuana) instead of "F." This appears to be a clerical error. Furthermore, "An appellate court should refrain from employing errors patent review to set aside guilty pleas about which the defendant makes no complaint and which resulted in dispositions of the cases favorable to the defendant." State v. Campbell, 01-0329 (La. 11/2/01), 799 So.2d 1136 (per curiam). See also, State v. Collins, 04-751, p. 7 (La.App. 5th Cir.11/30/04), 890 So.2d 616, 620. Here, the Defendant made an advantageous plea bargain. He received 15 years. If we were to vacate the plea, the Defendant would possibly be prejudiced by receiving a greater sentence. For a violation of La.R.S. 40:966 F(1) [possession of 60 lbs. to 2,000 lbs. of marijuana], the maximum sentence is 30 years. Under these circumstances, we will not vacate the guilty plea.
Accordingly, the Defendant's conviction and sentence are hereby affirmed. The case is remanded with instructions to the trial judge to send written notice to the Defendant within ten days of the rendition of this opinion of the correct statement of the law regarding the prescriptive period for post conviction relief, and to file written proof in the record that the Defendant received the notice.
AFFIRMED AND REMANDED.
NOTES
[1] The indictment cited La.R.S. 40:966 F., rather than the appropriate sub-part, La.R.S. 40:966 F(1). In addition, the guilty plea form refers to La.R.S. 40:966 C. See our discussion of this issue in the error patent section of this opinion, ante.
[2] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] The Defendant filed a supervisory writ application from this ruling. We denied the writ. Under the discretionary doctrine of "law of the case," an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. See: State v. Junior, 542 So.2d 23, 27 (La.App. 5th Cir.1989), writ denied, 546 So.2d 1212 (La.1989). However, in this case, the facts justify our review of the issue on appeal.